787 So.2d 130 (2001)
Andrew Henry MANN, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-1221.
District Court of Appeal of Florida, Third District.
April 25, 2001.
*132 Bennett H. Brummer, Public Defender, and Rosa C. Figarola, and Manuel Alvarez, Assistant Public Defenders, for appellant.
Robert A. Butterworth, Attorney General and Jill K. Traina, Assistant Attorney General, for appellee.
Before COPE, GERSTEN, and GREEN, JJ.
GREEN, J.
Andrew Henry Mann appeals his conviction and sentence for first degree arson entered after a jury trial. We affirm for the reasons which follow.
Mann was charged with starting a fire in his jail cell at the South Florida Reception Center. At the time, Mann was an inmate serving a seventy month sentence. On the morning of the fire, Mann had been ordered to a confinement cell for arguing with and threatening a corrections officer.
Before Mann was taken to the cell, it was searched and cleaned to ensure that it contained no contraband materials (i.e. matches, clothing, bed sheets, paper cups, magazines, etc.). The cell was approximately four feet wide by eight feet long, and contained a bunk bed, sink, and a toilet. It had a four-by-four inch glass window in the steel door, and a latch through which inmates receive food and medication.
Mann's clothes were thoroughly inspected and he was strip searched to ensure that he was not hiding any contraband, and none was found. He was then taken to the cell where he, along with Officer Holder, inventoried the cell's contents. Mann claimed that the mattress on his assigned top bunk was torn, and that he removed it from the bunk and placed it on the floor by the door to be exchanged for another mattress. Mann further stated that he declined to sign the cell inspection sheet detailing the contents and condition of the cell. At trial, however, a signature which purported to be Mann's, was on the inspection sheet.[1] Further, the cell inspection sheet indicated that the mattress was worn rather than torn as claimed by Mann.
Approximately thirty minutes after Mann was placed in the cell, Holder was performing routine security checks of the dorm when he smelled smoke. He looked through the glass window of Mann's cell and saw Mann standing by the mattress that had been placed on the floor. The mattress was on fire. Holder believed that Mann was feeding the fire because he saw Mann drop toilet paper onto the mattress. Thereafter, Holder radioed his sergeant, Officer Heard, and informed him that there was a fire in the dormitory.
Holder then went to inform Officer Bridges, another corrections officer, that there was a fire in Mann's cell. Bridges gave Holder a fire extinguisher and accompanied him and Heard to Mann's cell. When they arrived at the cell, they saw Mann standing by the wall looking at the fire. Mann was instructed to place his hands through the latch in the door so that he could be handcuffed.[2] He was then escorted to the infirmary to be evaluated for possible injuries and smoke inhalation. *133 After Mann was taken from the cell, Holder extinguished the fire on the mattress. These officers saw no evidence of another fire in the cell.
Later, Lieutenant Dresback, a Metro Dade Para Fire Investigator, and Fire Marshall Olon arrived and found evidence of two separate fires in the cell. In addition to the mattress fire on the floor, they saw evidence of a fire on the top bunk which had burned itself out. Dresback and Olon also found blue issue pants, magazines, and cups inside the cell.
At trial, the inspectors opined that a fire was started on the top bunk, which was then transferred to the mattress that lay on the floor. The fire inspectors also testified that they did not observe any scorching on the bottom of the cell door, and thus they did not believe that the source of the fire was from a flame underneath the door. Dresback, however, did acknowledge that if the mattress had been by the door, and the mattress cover was separated to expose the filler material located in the mattress, a wick could have been passed underneath the door and started the fire. He claimed that a "quick pass-through" of a flame would not have scorched the bottom of the door.
During Olon's testimony, the prosecutor asked, over objection, whether he, based on his thirty arson investigations in the prison system, had come to have an opinion as to why inmates start fires in their cells. The objection was overruled, and Olon testified that inmates in the state facility start fires to be transported to a county facility for better conditions. The state elicited similar testimony from Bridges and Heard who claimed that inmates generally start fires so that they can be transferred to the Dade County Jail to enjoy better living conditions such as airconditioning, cable television and visitation rights.
After the state rested its case, Mann took the stand and gave a different version of the events. He testified that prior to the fire, he had been standing at a window located on the back wall of the cell attempting to attract the attention of an inmate in the next dormitory. Mann explained that he wanted someone to notify his family that he was in confinement so that they would not attempt to visit him. While talking by the window, Mann claims that he overheard inmates in the next cell yelling and asking him whether he had matches. Mann responded that he did not and then heard a trustee nicknamed "Pompano" walk by. Mann returned to his conversation at the window. A short time later, Mann claimed that he smelled smoke and turned around. When he realized that the smoke was coming from within his cell, he grabbed toilet paper, dipped it in the toilet, and threw it on the mattress in an effort to put the fire out. Corrections officers came to the door, took him out of the cell, and put the fire out.
During his testimony, Mann, a former trustee, explained that trustees regularly traded items of value for a light to allow inmates to smoke. The trustees would pass a wick or a lit paper, under the door so the inmate could light a cigarette. Mann speculated that this may have been how the fire started on his mattress, although he did not see it happen.
On cross-examination, the state sought to discredit Mann by confronting him about not telling the correction officers that he had heard the trustee, Pompano, outside his cell just before the fire. There was no objection and Mann acknowledged that prior to his trial testimony, he had told no one about his theory of how the fire started. The state argued Mann's silence to the jury again during at closing *134 argument.[3]
The jury convicted Mann as charged and he brought the instant appeal. Essentially, he argues that the cumulative affect of several evidentiary errors, and/or impermissible prosecutorial comments deprived him of a fair trial, thus warranting reversal of his conviction. We disagree and will address each issue presented.
Mann first argues that the trial court erred in permitting corrections officers, Bridges and Heard, to testify that inmates in confinement generally start fires so that they can be transferred back to the Dade County Jail where living conditions are more favorable. Mann, citing to Nowitzke v. State, 572 So.2d 1346 (Fla. 1990); Doherty v. State, 726 So.2d 837 (Fla. 4th DCA 1999); and Lowder v. State, 589 So.2d 933, 935 (Fla. 3d DCA 1991), asserts that the admission of generalized criminal behavior by law enforcement officers to prove a particular defendant's guilt constitutes reversible error. We note at the outset that this issue was not properly preserved for appellate review. During Bridge's testimony defense counsel merely objected to said testimony as having "no predicate," and counsel never objected at all to Heard's direct examination testimony. See Castor v. State, 365 So.2d 701 (Fla.1978).[4]
Even if we were to deem that the admission of such evidence to be error, given the fact that Mann's motive or intent was not an issue in this case, we would nevertheless have to find such error to be harmless in light of the fact that Fire Marshall Olon was permitted to similarly opine that inmates start fires in their cells to be transferred to the county jail facility with better living conditions.
Mann next claims that the trial court erred when it permitted the state to present the highly prejudicial evidence of his prior bad acts where he had not placed his character at issue and where character was not an element of the charge. Specifically, Mann asserts that the trial court erred in permitting the state to elicit evidence of Mann's prior confinement a month earlier in an effort to demonstrate that Mann knew the procedure regarding the cell inspection sheet; that Mann argued with and threatened the correction officer, thus leading to his confinement; and of his being handcuffed when he was escorted from the burning cell. Because Mann had not opened any door which would allow the state to assail his character, he complains that this evidence impermissibly portrayed him as a troublesome inmate. We disagree and conclude that the evidence elicited was relevant to demonstrate the course of events leading up to the act of arson and/or to establish the precautionary safety measures in place at the South Florida Reception Center.
Mann next contends that the prosecutor's repeated comments during closing argument regarding his failure to tell the correction officers or fire inspectors about the trustee's presence immediately prior to the fire was an impermissible comment on his silence. The state counters, and we agree, that the prosecutor's closing argument was not a violation of Mann's right to silence. At the time that Mann failed to alert the guards about the trustee's alleged presence, Mann was not in custody for the *135 arson charge. Moreover, he was not charged with arson until after the fire officials had completed their investigation. Thus, this issue is squarely controlled by this court's decisions in Reaser v. State, 356 So.2d 891 (Fla. 3d DCA 1978) and Lebowitz v. State, 343 So.2d 666 (Fla. 3d DCA 1977). In Reaser, we held that a defendant's pre-custody failure to offer the police the defense he later asserted at trial when he knew that he was likely to be charged with a crime, can be used to impeach him at trial after he had voluntarily taken the stand and offered testimony which was inconsistent with his earlier silence. Similarly, in Lebowitz, we held that the state did not comment on the defendant's right to remain silent when it impeached him about his pre-arrest silence.
Finally, Mann complains that the introduction of the cell inspection sheet into evidence was erroneous because it lacked trustworthiness since the state was unable to establish which officer had filled out the sheet. We disagree. In order to lay a foundation for the business record exception to the hearsay rule,[5] it is not necessary to call the person who actually prepared the document. The record custodian or any qualified witness who has the requisite knowledge to testify as to how the record was made can lay the necessary foundation. See Forester v. Norman Roger Jewell & Brooks Intern., Inc., 610 So.2d 1369, 1373 (Fla. 1st DCA 1992); McEachern v. State, 388 So.2d 244, 246 (Fla. 5th DCA 1980). In this case, the trial court correctly determined that the state laid a proper predicate for the admission of this document and there was no abuse of discretion in this regard.
Based upon the foregoing, we conclude that there was no reversible error and that the appellant was not otherwise deprived of a fair trial. Accordingly, we affirm his conviction and sentence.
Affirmed.
GERSTEN, J., concurs.
COPE, J. (specially concurring).
I concur in the result but disagree on the analysis of the issue of comment on silence.
Under established policy at the South Florida Reception Center, if an inmate sets fire to something in his cell, the inmate is charged with arson. The inmate is removed from the cell, taken to the infirmary to be sure that the inmate has suffered no physical injury, and then taken to the Dade County Jail.
Because this is established policy, it seems to me that when defendant Mann was taken out of his cell, he was reasonably viewed as being in custody for Miranda[*] purposes. No Miranda warnings were administered at that time.
It is true that when inmates are moved to or from the confinement area (which is where defendant was), they are handcuffed. Under ordinary circumstances, this is simply a routine security practice. But under the circumstances present here, it was clear that the defendant's first stop would be the infirmary, and the second stop would be the Dade County Jail.
Under Florida constitutional law, there can be no comment on postarrest silence. State v. Hoggins, 718 So.2d 761, 767-69 (Fla.1998). At trial, the defendant took the stand and testified that he believed the fire occurred accidently when a trustee named Pompano put a lighted wick under *136 his door, mistakenly intending to "shoot a light" for someone in a different cell. The State cross-examined the defendant about the fact that he had never told anyone this story previously. Such cross-examination is permissible under federal law, see id. at 765, and there was no defense objection to the cross-examination.
Prior to closing argument, defense counsel realized that the cross-examination was objectionable under state law. The defense asked the trial court to preclude the State from arguing to the jury that the defendant should not be believed because he did not recount his story about Pompano at the time of the fire. The trial court denied the defense motion.
In my view, the trial court ruling was correct. The cross-examination had occurred without objection. Once the testimony had come in, the State was free to argue it.
Even assuming that the testimony should not have come in, any error was harmless beyond a reasonable doubt. The defendant's theory in this case was that the fire was caused accidently by the trustee Pompano. But defendant's theory was inconsistent with the physical evidence in the case. The photographs and fire marshal's testimony show that there was a second fire, on top of the defendant's bunk. There is no plausible explanation for the second fire, and it was physically impossible for the second fire to have been set by accident.
I also respectfully disagree with the analysis of the testimony of Officer Heard and Fire Marshall Olon. The defense had addressed their testimony, as well as that of Officer Bridges, by motion in limine which the trial court denied. The defense renewed the objections during trial. The overruling of the objections, however, was within the trial court's discretion. Assuming there was any error, it was harmless.
NOTES
[1] During cross-examination, the state sought, over objection, to establish that Mann had in fact signed the cell inspection sheet by introducing evidence that Mann had been in confinement during the previous month and had signed a Cell Inspection Sheet on that occasion. The state, however, was precluded from eliciting testimony comparing the signatures of the two inspection sheets in the absence of an expert.
[2] Mann was handcuffed before the door was opened as a safety precaution.
[3] Prior to closing argument, the defense made a motion to preclude the state from arguing that Mann had told no one about the presence of the trustee in the hallway prior to the fire claiming that such evidence constituted an impermissible comment on Mann's right to silence. The trial court denied the motion.
[4] Similarly, any objections during re-direct examination were based solely on relevance.
[5] See § 90.803(6), Fla. Stat. (1976).
[*] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).