937 So.2d 722 (2006)
Andrew Henry MANN, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-1358.
District Court of Appeal of Florida, Third District.
September 1, 2006.
*723 Bennett H. Brummer, Public Defender, and John E. Morrison, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Jill K. Traina, Assistant Attorney General, for appellee.
Before COPE, C.J., and SHEPHERD and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The defendant, Andrew Henry Mann ("Mann"), appeals from the summary denial of his motion for postconviction relief filed pursuant to Rule 3.850, Florida Rules of Criminal Procedure. As we agree with the trial court that the evidence Mann claims entitles him to relief does not qualify as newly discovered evidence, we affirm. We also conclude, as did the trial court, that the Public Defender's Office lacks authority to represent a criminal defendant, who is not under sentence of death, in a collateral postconviction proceeding without being appointed to do so.
Mann was convicted of arson for a fire he started in his prison cell. The fire occurred after the defendant had been moved to a "close confinement" cell for arguing with and threatening a correctional officer. The conviction was affirmed by this court on direct appeal. Mann v. State, 787 So.2d 130 (Fla. 3d DCA 2001). Thereafter, the Public Defender's Office filed an unsworn motion for postconviction relief in Mann's behalf on the grounds of "newly discovered evidence." The Public Defender's Office subsequently amended the postconviction motion by filing a sworn motion on the same basis. Mann appeals the trial court's summary denial of his *724 amended motion, and challenges the trial court's finding that the Public Defender's Office did not represent him in the postconviction proceedings which were before the trial court. We conclude that the trial court did not err in failing to conduct an evidentiary hearing as the evidence alleged in the sworn motion does not meet the legal requirements of newly discovered evidence. We also agree with the trial court that the Public Defender's Office is without legal authority to represent a defendant on a non-death penalty postconviction matter unless appointed to do so. We, therefore, affirm.
Mann claims that the trial court erred in summarily denying his motion for postconviction relief brought on the basis of newly discovered evidence. After reviewing the trial testimony, the trial court denied the motion without conducting an evidentiary hearing because it concluded that the "evidence" which Mann had now obtained "could have and/or should have [been obtained] through reasonable diligence" prior to trial. We agree that the evidence now in Mann's possession was easily discoverable with the exercise of due diligence prior to trial and, therefore, does not constitute newly discovered evidence.

EVIDENCE INTRODUCED AT TRIAL
While incarcerated at the South Florida Reception Center, Mann was ordered into a close confinement cell after he threatened a correctional officer. Approximately thirty minutes after Mann was placed into the cell, Officer Holder smelled smoke. When Officer Holder looked through the glass window of Mann's cell, he saw Mann standing near a mattress, which had been placed on the floor near the cell door, and the mattress was on fire. Officer Holder testified that he saw Mann standing over the mattress feeding the fire by dropping toilet paper onto the burning mattress. A Metro-Dade fire investigator and a fire marshal inspected the cell and investigated the fire. They found evidence of two separate fires in the cell: (1) the mattress which was burning on the floor and (2) a mattress on the top bunk, in which the fire had burned itself out. Based upon their investigation, these investigators concluded that a fire was started on the top bunk, which was then transferred to the mattress on the floor. The State argued that Mann's motivation for setting the fire was to escape the harsh conditions of being housed in a close confinement cell. The State explained that inmates placed in these units for disciplinary and/or security reasons are removed from the jail's general population, live without the benefit of air conditioning (it was August in Miami), remain in their cells twenty-four hours a day with no exercise for the first thirty days, have no television privileges, no canteen privileges, and cannot have any visitors. When an inmate sets fire to his cell, he is charged with arson and then transferred to the Dade County Jail, where he is returned to the jail's general population, with the added "luxury" of air conditioning, daily exercise, cable TV, and much greater freedom of movement.
Mann testified that he did not start the fire and that he believed a "trustee" named "Pompano" may have started the fire. "Trustees" are inmates who are permitted to work around the prison and have greater privileges. They assist the officers, clean, help feed the inmates, and have greater freedom of movement.[1] Mann claimed that, when he heard voices, he turned around and saw the trustee he knows as "Pompano." Thereafter, Mann turned away, and moments later he smelled smoke and saw the mattress that *725 he had placed by the door to be exchanged because it was worn, on fire. He explained that these "trustees" or "run-arounds" will often "slip" the inmates cigarettes, cigars, candy, and other goods, and will "pass them a light" by lighting a piece of paper and throwing it under the door of the cell. While he did not see how the mattress caught fire, Mann testified that he believed that was how the fire started.

NEWLY DISCOVERED EVIDENCE
Mann claims that in January 2004, while incarcerated at the Dade County Jail, he discovered the identity of the trustee who started the fire in his cell. An inmate, Dyron Tucker, allegedly told Mann that he started the fire, but did not realize that Mann had been charged with a crime. Upon learning this information, Mann contacted the Public Defender's Office, and thereafter, the Public Defender's Office obtained a sworn statement from Tucker, wherein he averred that, on the day of the fire, he was working as a run-around on the floor where Mann was incarcerated; that he threw a lit object into Mann's cell; and that he quickly walked away so that he would not be caught by the guards. Shortly thereafter, he heard the fire alarm.

ANALYSIS
The Florida Supreme Court, in Jones v. State, 591 So.2d 911 (Fla.1992), set the current standard for reviewing claims based upon newly discovered evidence: (1) "the asserted facts `must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence,'" Jones, 591 So.2d at 916 (quoting Hallman v. State, 371 So.2d 482, 485 (Fla.1979)), and (2) "the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." Jones, 591 So.2d at 915; see also Smith v. State, 931 So.2d 790 (Fla.2006); Miller v. State, 926 So.2d 1243 (Fla.2006); Rutherford v. State, 926 So.2d 1100 (Fla.), cert. denied, ___ U.S. ___, 126 S.Ct. 1191, 163 L.Ed.2d 1145 (2006); Wright v. State, 857 So.2d 861 (Fla.2003); McLin v. State, 827 So.2d 948 (Fla.2002).
Based upon this clearly articulated standard, the evidence offered by Mann does not qualify as newly discovered evidence as the asserted facts were known to Mann and/or his lawyer prior to trial and the identity of the witness was easily ascertainable. As Mr. Tucker appears willing to testify that he started the fire (accidentally), there is no reason to believe that he would not have been equally willing to do so at Mann's trial in 1999. In support of our conclusion, we refer to a portion of the transcript attached by the trial court in its order denying relief.
[STATE]: Now, you said there was a run-around in that area, correct?
[DEFENDANT]: Yes.
[STATE]: Ever see him before?
[DEFENDANT]: Yes.
[STATE]: You knew who he was, right?
[DEFENDANT]: Yes.
[STATE]: What is his name?
[DEFENDANT]: I don't know. I think they call him Pompano. That's where he is from. The nickname in prison where you are from.
[STATE]: It is your testimony, based on direct examination, it was Pompano who set the mattress on fire?
[DEFENDANT]: If that was the case, I would have told him when they first pull me. I didn't actually see him. All I know next door asked him for a match.
[STATE]: They asked Pompano for a match?
[DEFENDANT]: They asked for a light.

*726 [STATE]: And the next thing you know, your cell was on fire?
[DEFENDANT]: Right.
[STATE]: And Pompano, the run-around you knew, you knew from confinement a month ago, right?
[DEFENDANT]: Yes.
From this dialogue, it is clear that Mann personally knew "Pompano," that he believed Pompano had started the fire, and that Pompano was in the unit at the time because he was working as a trustee or run-around. Officer Nathaniel Graham, a correctional officer working in the unit where Mann was housed, testified that there were two run-arounds working in that area at the time. Officer Holder testified that he noticed a trustee in section A, which is adjoining section C, the section Mann was housed in, when he smelled the smoke coming from Mann's cell. Had Mann wanted to identify and locate Pompano, it would not have taken much effort to do so. Obviously, inmates are not simply permitted to roam around outside of their cell blocks, especially in the locked close confinement section that Mann was housed in. Trustees earn their status and, one would assume, they are being monitored. Mann could have requested the name of any trustee who was granted access to his unit that morning, examined the booking photographs of these trustees, and since he had seen this particular trustee, have readily identified him. This process is a simple investigation which could have been performed by the Public Defender's Office in its exercise of due diligence prior to trial. Thus, as the evidence submitted clearly does not constitute newly discovered evidence, the trial court did not err in denying Mann's motion for postconviction relief without granting him an evidentiary hearing.

REPRESENTATION BY THE PUBLIC DEFENDER'S OFFICE IN NON-DEATH PENALTY POSTCONVICTION COLLATERAL PROCEEDINGS
While the trial court accepted and ruled on the postconviction motion filed by the Public Defender's Office, it concluded that the Public Defender's Office did not, in fact, represent Mann because it had not been appointed to do so. We agree.
A criminal defendant's right to counsel is constitutionally mandated regarding representation at trial and on direct appeal. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)(holding that a criminal defendant has a Sixth Amendment right to counsel at trial); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)(holding that a defendant has a constitutional right to counsel as a matter of right on direct appeal). The right to representation in a postconviction collateral proceeding is generally derived by statute and only becomes constitutionally mandated if the postconviction motion presents a meritorious claim and a hearing on the motion is potentially so complex that counsel is necessary. Russo v. Akers, 724 So.2d 1151 (Fla.1998).
In addressing this issue, several statutory provisions are pertinent. First, section 924.051(9), Florida Statutes (2005), provides: "Funds, resources, or employees of this state or its political subdivisions may not be used, directly or indirectly, in appellate or collateral proceedings unless the use is constitutionally or statutorily mandated." In addition, section 27.702(2), Florida Statutes (2005), provides: "The capital collateral regional counsel shall represent persons convicted and sentenced to death within the region in collateral postconviction proceedings, unless a court appoints or permits other counsel to appear as counsel of record." Finally, section *727 924.066(3), Florida Statutes (2005), provides: "A person in a noncapital case who is seeking collateral review under this chapter has no right to a court-appointed lawyer."
Thus, a criminal defendant is constitutionally entitled to representation at trial and on direct appeal and is statutorily entitled to counsel in all collateral relief proceedings when under a sentence of death. See Spalding v. Dugger, 526 So.2d 71, 72 (Fla.1988)(holding that "under section 27.702, each defendant under sentence of death is entitled, as a statutory right, to effective legal representation by the capital collateral representative in all collateral relief proceedings"). There is, however, no statutory entitlement to representation in collateral relief proceedings for defendants not under a sentence of death.
The Public Defender argues in this appeal that while it is true that Mann was not statutorily entitled to representation in pursuing his motion for postconviction relief, the Public Defender's Office can seek postconviction relief, if in the exercise of its professional judgment, it concludes such representation is necessary to provide effective and complete representation of a defendant. While the Public Defender's desire to continue to assist criminal defendants, even after their convictions have become final after appeal and their statutory duty and authority has terminated, is admirable, we conclude that to do so would violate Florida's statutory scheme and deny all other similarly situated defendants desirous of representation in collateral proceedings equal protection under the constitutions of the State of Florida and the United States.
Historically, after the United States Supreme Court issued Gideon, Florida was one of the first states to institute a state public defender system to represent indigent defendants and to adopt a broad omnibus postconviction relief procedure. While not constitutionally mandated, Florida provides counsel to indigent defendants under sentence of death in collateral postconviction proceedings. Florida, however, has specifically limited the use of the state's "funds, resources, and employees" in collateral proceedings, when constitutionally or statutorily mandated. Since collateral representation in noncapital cases is not statutorily mandated, the use of the Public Defender's Office, which includes its lawyers, staff, resources, and funds provided for that purpose, to pursue collateral review in noncapital cases may, therefore, only occur if constitutionally mandated.
In Graham v. State, 372 So.2d 1363 (Fla. 1979), the Florida Supreme Court noted that, while there is no absolute right to counsel in postconviction relief proceedings, due process may require representation in certain postconviction proceedings. Specifically, the Court, quoting Hooks v. State, 253 So.2d 424 (Fla.1971), provided that:
The question in each proceeding of this nature before this Court should be whether, under the circumstances, the assistance of counsel is essential to accomplish a fair and thorough presentation of the petitioner's claims. Of course, doubts should be resolved in favor of the indigent petitioner when a question of the need for counsel is presented. Each case must be decided in the light of the Fifth Amendment due process requirements.
Graham, 372 So.2d at 1365 (quoting Hooks, 253 So.2d at 426). In making this determination, the Florida Supreme Court held that:
The adversary nature of the proceeding, its complexity, the need for an evidentiary hearing, or the need for substantial legal research are all important elements *728 which may require the appointment of counsel. This appointment authority is discretionary, with any doubts being resolved in favor of an indigent defendant. There is no absolute duty to appoint counsel for an indigent defendant in a post-conviction relief proceeding unless the application on its face reflects a colorable or justiciable issue or a meritorious grievance. The court has the authority to summarily deny relief without appointment of counsel when the petition and record reflect it is without merit.
Graham, 372 So.2d at 1366; see also Russo v. Akers, 724 So.2d 1151, 1153 (Fla.1998)(holding that when counsel is constitutionally mandated under Weeks and Graham, section 924.051(9) does not prohibit or preclude appointment of counsel for indigent defendants in seeking collateral review).
While section 924.051(9) prohibits the use of funds, resources, or employees in collateral proceedings unless the use is constitutionally or statutorily mandated, the Public Defender argues that it may exercise its professional discretion and independence and represent defendants without appointment in noncapital collateral proceedings. In support of its position, it relies on Polk County v. Dodson, 454 U.S. 312, 321, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); Green v. State, 620 So.2d 188 (Fla.1993); State ex rel. Smith v. Brummer, 426 So.2d 532 (Fla.1982); and Graham. A review of these cases, however, reflects that none involve the issue presented herein.
We begin our review with Polk County v. Dodson. Dodson, an Iowa criminal defendant who was convicted and incarcerated, brought a civil rights suit against Iowa's Offender Advocate, which is the functional equivalent of Florida's Public Defender's Office, and others. Dodson claimed that his civil rights were violated when his appointed appellate counsel moved to withdraw from representing him on the ground that his appellate claims were legally frivolous. The Supreme Court of the United States held that Dodson's constitutional rights were not violated because any lawyer, whether privately retained or publicly appointed, has a legal and ethical duty not to pursue a frivolous motion or appeal. Polk County, 454 U.S. at 323-24, 102 S.Ct. 445. In making that determination, the Court noted that
a public defender works under canons of professional responsibility that mandate his exercise of independent judgment on behalf of the client. "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services."
Polk County, 454 U.S. at 321, 102 S.Ct. 445 (quoting DR 5-107(B), ABA Code of Professional Responsibility (1976)). Thus, the issue in Polk County was whether the Public Defender who was appointed to represent the defendant could, in the exercise of its professional discretion and ethical obligations, refuse to pursue an appeal or motion it concluded was frivolous. We find the principles applied in Polk County are, therefore, totally inapplicable to the instant case because the Public Defender, without appointment or legal authority, attempted to represent a criminal defendant in a noncapital collateral proceeding.
We likewise find the remainder of authority relied upon equally unavailing. In Graham v. State, the Florida Supreme Court addressed the issue of whether the State of Florida had an obligation to provide counsel to defendants under sentence of death in federal proceedings. The Court noted that the appointment of counsel, even to those under sentence of death, *729 is not constitutionally mandated and that the State of Florida has no obligation to provide counsel in federal proceedings. However, the Court concluded that, if counsel was appointed to represent an indigent defendant in a postconviction relief proceeding, appointed counsel may exercise his/her professional discretion in determining what relief to seek. Thus, once appointed for state postconviction purposes, counsel may also pursue federal postconviction relief. Graham is, therefore, inapplicable to the instant case as the defendants in Graham were under sentences of death, counsel had been appointed to assist the defendants in seeking postconviction collateral relief, and the Court simply stated that appointed counsel, once appointed, could pursue whatever relief he/she believed was appropriate. In the instant case, Mann was not appointed postconviction relief representation. The Public Defender's Office was not free to exercise discretion without being granted the authority to act in behalf of the defendant.
Similarly, in State ex rel. Smith v. Brummer and in Green v. State, counsel had been appointed and was representing his client. The issue was whether in representing his client, appointed counsel could also seek relief in federal court. Mann cites to no case, nor were we able to find a case, wherein the Public Defender's Office was permitted to represent a defendant who was not under sentence of death in a collateral postconviction relief proceeding without being appointed to do so. In fact, the Second District Court of Appeal has recently held to the contrary. See Perry v. State, 869 So.2d 41 (Fla. 2d DCA 2004)(holding that the public defender was not authorized to file a motion collaterally attacking the defendant's sentence, and affirming the trial court's dismissal of Perry's Rule 3.800(a) motion filed by the public defender without prejudice to Perry's right to file such a motion pro se).
In summary, an indigent criminal defendant (in a felony case) has the constitutional right to counsel when charges are pending and on direct appeal. All defendants under sentence of death have a statutory right to representation in seeking collateral postconviction relief and, the appointed Public Defender may exercise his/her professional discretion as to the nature, scope, and court to seek that relief. Defendants who are not under sentence of death have no statutory right to representation of counsel in seeking collateral postconviction relief and only have a constitutional right to counsel in those proceedings where under the circumstances, the assistance of counsel is essential to accomplish a fair and thorough presentation of the defendant's claims. Unless a court makes the determination that representation is constitutionally mandated, funds, resources, and employees of the Public Defender's Office may not be used directly or indirectly in collateral proceedings of defendants not under sentence of death. See § 924.051(9), Fla. Stat. (2005). Thus, the Public Defender's Office may not represent a defendant not under sentence of death in a collateral proceeding unless appointed to do so. See § 27.51(4), Fla. Stat. (2005) (prohibiting the public defender and assistant public defenders from engaging in the private practice of criminal law).
Affirmed.
COPE, C.J., concurring.
As stated in Judge Rothenberg's opinion, there were two fires in the cell of defendant-appellant Mann: "(1) the mattress which was burning on the floor and (2) a mattress on the top bunk, in which the fire had burned itself out." Majority opinion at 724.
*730 The defendant's theory at the original trial, and in his motion for postconviction under Florida Rule of Criminal Procedure 3.850, is that the fire was set by accident when a trustee passed a light under the door of the cell. Majority opinion at 724-25. The defendant's position is that the lighted material came under the door and came to rest on the mattress that was on the floor, which caught fire.
Even if the testimony of the trustee could be viewed as newly discovered evidence, the problem is that "[t]he photographs and fire marshal's testimony show that there was a second fire, on top of the defendant's bunk. There is no plausible explanation for the second fire, and it was physically impossible for the second fire to have been set by accident." Mann v. State, 787 So.2d 130, 136 (Fla. 3d DCA 2001) (concurring opinion).
SHEPHERD, J., specially concurring.
I join that portion of the majority opinion holding that the Office of the Public Defender does not have discretionary authority post-conviction to continue to represent a defendant not under a sentence of death. See supra pp. 726-29. This procedural ground is a sufficient ground to affirm the decision of the trial court below. Accordingly, it is not necessary to reach the merits of this appeal.[2]See N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 640 (Fla.2003) ("Pursuant to the doctrine of judicial restraint, we decline to address petitioners' remaining constitutional claims because resolution of those claims is unnecessary for the disposition of this case."); Lake Towers, Inc. v. Axelrod, 216 So.2d 86, 87 (Fla. 4th DCA 1968) ("We expressly [d]o not decide the sufficiency of the complaint or of the lis pendens, or any of the other matters raised by defendant, since such issues are not necessary to the disposition of this matter."); see also PDK Labs., Inc. v. United States DEA, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring) ("This is a sufficient ground for deciding this case, and the cardinal principle of judicial restraint  if it is not necessary to decide more, it is necessary not to decide more  counsels us to go no further.").
NOTES
[1] These trustees are also referred to as "run-arounds."
[2] Because the error is procedural, however, I would afford appellant thirty days from the date of this court's mandate within which to file an amended motion which complies with Florida Rule of Criminal Procedure 3.850, either pro se or with proper representation. See Hickey v. State, 763 So.2d 1213 (Fla. 1st DCA 2000).