IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

STATE OF FLORIDA,

      Appellant,

v.                                      Case No. 5D18-683

RONALD GRATE AND CHARLES MORTON,

      Appellees.

_____/

Opinion filed July 27, 2018

Appeal from the Circuit Court
for Brevard County,
Charles J. Roberts, George T. Paulk
and Jeffrey F. Mahl, Judges.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Rebecca R. McGuigan,
Assistant Attorney General, Daytona
Beach, for Appellant.

James S. Purdy, Public Defender, and
Nancy Ryan, Assistant Public Defender,
Daytona Beach, for Appellees.

ORFINGER, J.

The State of Florida appeals the circuit court's order denying its petition for a writ

of quo warranto, challenging the Office of Public Defender's authority to intervene in civil

traffic infraction cases.[1] We treat this matter as a direct appeal, reverse the circuit court's

order, and remand with instructions to grant the petition.

_____

[1] The circuit court considered this matter with a three-judge panel. Judge Paulk
dissented and would have granted the petition.

Ronald Grate and Charles Morton were charged in county court with driving with a revoked license as a habitual traffic offender. The Office of Public Defender was appointed to represent them. The assistant public defender assigned to the cases filed motions in county court to modify the adjudications of guilt in earlier civil traffic infraction cases in order to remove a predicate conviction necessary for habitual traffic offender sanctions. The State moved to strike each motion to modify, arguing that the Office of Public Defender had no authority to represent Grate and Morton in civil traffic infraction matters. The county court denied the State's motion to strike and modified the earlier adjudications of guilt to withheld adjudications of guilt.[2] The State then filed a petition for a writ of quo warranto in the circuit court, challenging the public defender's authority to intervene in civil traffic infraction matters. Quo warranto is the proper means for inquiring whether a particular individual has improperly exercised the power or right derived from the state. Whiley v. Scott, 79 So. 3d 702, 707 (Fla. 2011). The circuit court denied the State's petition, and the matter is now before us.

Before considering the merits of the arguments presented, we must first determine the nature of our review of the circuit court's decision denying the State's request for a writ of quo warranto. Review of extraordinary writ proceedings is permissible by direct appeal or by certiorari depending on the nature of the petition filed. If the petition for extraordinary relief is filed in the circuit court to review an order by a lower tribunal, the resulting order of the circuit court is reviewable in the district court of appeal by certiorari and not by appeal. See, e.g., Fla. R. App. P. 9.030(b)(2)(B) ("The certiorari jurisdiction of

---

[2] We agree with the State that the county court lacked jurisdiction to enter the subject orders. See Fla. R. Traf. Ct. 6.490.

district courts of appeal may be sought to review . . . final orders of circuit courts acting in their review capacity."); Sutton v. State, 975 So. 2d 1073 (Fla. 2008) (holding prohibition used in circuit court to review disqualification order by county court was reviewable by certiorari); Sheley v. Fla. Parole Comm'n, 720 So. 2d 216 (Fla. 1998) (holding that mandamus used in circuit court to review decision by parole commission was reviewable by certiorari). However, when a petition for extraordinary relief initiates a new civil action in the circuit court and is not used as a method of reviewing an order of the county court or a local administrative tribunal, the final order is reviewed by appeal. See, e.g., Fla. R. App. P. 9.030(b)(1)(A) ("District courts of appeal shall review, by appeal . . . final orders of trial courts . . . ."); Fla. R. Civ. P. 1.630 (rule governing extraordinary writs); City of Miami Beach v. State ex rel. Wood, 56 So. 2d 520, 520 (Fla. 1952) (appeal from judgment entered in quo warranto proceedings); Brock v. Bd. of Cty. Comm'rs of Collier Cty., 21 So. 3d 844, 845-46 (Fla. 2d DCA 2009) (reviewing clerk's appeal from circuit court's granting of quo warranto). Here, because the petition was a new civil action in the circuit court and was not appellate in nature, our review is by appeal.

Turning to the merits, we consider this a matter of statutory construction subject to de novo review. Citizens Prop. Ins. Corp. v. Perdido Sun Condo. Ass'n, 164 So. 3d 663, 666 (Fla. 2015). "The starting point of statutory interpretation is the language of the statute itself." Herrin v. City of Deltona, 121 So. 3d 1094, 1097 (Fla. 5th DCA 2013) (citing GTC, Inc. v. Edgar, 967 So. 2d 781, 785 (Fla. 2007)). "If statutory language is clear and unambiguous, 'there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.'" Id. (quoting A. R. Douglass, Inc. v. McRainey, 137 So. 157, 159 (Fla. 1931)).

3

The Office of Public Defender was initially created in this state by statute, and later by an express constitutional provision, to provide indigent defendants the right of counsel guaranteed by the Sixth Amendment. Article V, section 18 of the Florida Constitution provides that the Office of Public Defender "shall perform duties prescribed by general law." This provision grants the Legislature the authority to delineate the duties to be performed by public defenders, including the types of cases for which public defenders can be appointed. Crist v. Fla. Ass'n of Criminal Def. Lawyers, Inc., 978 So. 2d 134, 141 (Fla. 2008). Section 27.51, Florida Statutes (2018), defines the duties of the Office of Public Defender and generally provides that public defenders shall represent indigents who have been charged or arrested for a variety of criminal offenses that could result in imprisonment and in a limited number of civil proceedings that threaten their liberty interests, as well as in all indigent criminal direct appeals. See, e.g., State ex rel. Smith v. Jorandby, 498 So. 2d 948, 950 (Fla. 1986) (holding section 27.51 permits representation by public defender only in circumstances entailing prosecution by state threatening indigent's liberty interest, including appeals). Thus, the duties of public defenders, as enumerated in section 27.51, include representation of indigent defendants only in circumstances that threaten liberty interests, which do not include civil traffic infraction proceedings. Accord § 924.051(9), Fla. Stat. (2018) ("Funds, resources, or employees of this state or its political subdivisions may not be used, directly or indirectly, in appellate or collateral proceedings unless the use is constitutionally or statutorily mandated.").

Despite the lack of statutory authority, it is argued that the Office of Public Defender can collaterally attack its client's prior civil traffic infraction adjudication, if, in the exercise

of its professional judgment, it concludes such representation is necessary to provide effective and complete representation. We reject that argument, as the court did in Mann v. State, 937 So. 2d 722, 726-29 (Fla. 3d DCA 2006), which concluded that while the public defender's desire to continue to assist criminal defendants, even after their convictions have become final after appeal and the public defender's statutory duty and authority has terminated, is admirable, to do so would violate Florida's statutory scheme and deny all other similarly situated defendants desirous of representation in collateral proceedings equal protection under the constitutions of the State of Florida and the United States. Though not precisely on point, we find further support for our position in the Florida Supreme Court's holding in State v. Kilgore, 976 So. 2d 1066 (Fla. 2007), that the Office of Capital Collateral Regional Counsel, an office similar to the Office of Public Defender, could not represent a capital defendant in challenging a prior non-capital conviction that the prosecution intended to use as an aggravating circumstance in the capital case. Certainly, if publicly funded counsel cannot collaterally attack a prior conviction in a death penalty case, we have no difficulty in concluding that the Office of Public Defender cannot collaterally attack a prior civil traffic infraction conviction.

For these reasons, the circuit court should have granted the State's petition for quo warranto. Accordingly, we reverse the circuit court order and remand with instructions to grant the petition.

REVERSED and REMANDED with instructions.


WALLIS and LAMBERT, JJ., concur.

5