DAMOORGIAN, J.
 

 Defendant, Shara Cooper, appeals her conviction and sentence for second-degree murder with a firearm, first-degree arson, grand theft (motor vehicle), and grand theft (firearm). Defendant raises two issues for our review. Finding no merit to defendant’s arguments, we affirm her conviction and sentence.
 

 By way of background, defendant and the victim, Samuel Norris, were romantically involved and lived together. At some point defendant discovered that Norris was being unfaithful to her. This prompted defendant to arrange for the theft of Norris’ truck and his gun. During the course of arranging for the theft, defendant contacted the police and met with an officer at her apartment regarding a break-in through her bedroom window. Defendant claimed to be sleeping during the break-in. Thereafter, defendant contacted the apartment property manager in order to have the window opening secured. That same day, a maintenance worker entered the apartment to place a piece of plywood over the broken window. While working inside the bedroom, the maintenance worker saw a male figure lying on his back on the master bed with his feet extended over the edge of the bed. With the exception of his ankles and feet, the individual on the bed was covered with black sheets. Despite creating noise by exiting and re-entering the apartment, and securing the plywood cover over the window opening by drilling screws through the wood and into the wall, the maintenance worker never observed the individual under the sheets move or change position. Defendant, who was present while the repair was being performed, advised the maintenance worker that the man in the bed was sleeping.
 

 Later that evening, the police responded to a fire in defendant’s apartment. After breaching the front door of the apartment, officers and firefighters discovered Norris lying face down on the ground in the master bedroom. Norris was extensively burned, lifeless, and did not have any clothes on his body. After a detailed investigation, the police determined that the fire was intentionally started and that its origin was the master bed. The investigation also revealed that the cause of Norris’ death was a gunshot wound to the head and that there was no indication that Norris was alive during the fire.
 

 During questioning by the police, defendant stated that Norris’ killer was her friend, Earl Burgess. After the State concluded its investigation, defendant was in-
 
 *492
 
 dieted for first-degree murder with a firearm, first-degree arson, grand theft (motor vehicle), and grand theft (firearm).
 

 At trial, the State sought to introduce defendant’s wireless telephone records through the expert testimony of a store manager with Verizon Wireless. The purpose behind introducing the wireless phone records was to establish defendant’s location on the date and time the crimes were committed. The State’s expert testified that he was: (a) responsible for monitoring and managing different Verizon retail stores; (b) trained and experienced in the operation of a cell phone, data servicing, records processing, and customer, billing, and technical support; and (c) knowledgeable in matters relating to call records and the transmission of customer calls through Verizon’s network. He also testified that Verizon maintained call records in the normal course of business and described how customer calls traveled through its system. With this information, the expert explained that, when a customer places a phone call, the call connects to a nearby tower location and then transmits to a switching station where a call record is stored at the time the call is made.
 

 Before the admission of defendant’s telephone records, defense counsel argued that the expert was not qualified to testify as to how Verizon maintained the records. Defense counsel further contended that the witness did not know if the records were contemporaneously made with a telephone call. In response, the State argued that the expert testified that the call records were maintained when phone calls were made and that, although he did not understand the electronic process involved in maintaining call records, an information technologist is not necessary to introduce the records into evidence. The trial court agreed with the State, finding that the witness was able to testify as to Verizon’s maintenance and preparation of its call records. The court concluded that the State provided a sufficient predicate to allow the introduction of the records into evidence.
 

 On appeal, defendant argues that the trial court erred in admitting her wireless phone records into evidence because the State’s expert was not a qualified witness. We disagree.
 

 “The admissibility of evidence is within the sound discretion of the trial court, and the trial court’s determination will not be disturbed on appellate review absent a clear abuse of that discretion.”
 
 Brooks v. State,
 
 918 So.2d 181, 188 (Fla.2005);
 
 see also LEA Indus., Inc. v. Raelyn Int’l, Inc.,
 
 363 So.2d 49, 52 (Fla. 3d DCA 1978) (“[I]t lies within the trial court’s discretion to determine whether admission of ... business records is justified.”).
 

 Business records are admissible if a records custodian or other qualified witness testifies that the record
 

 [ (1) ] was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record.
 

 Yisrael v. State,
 
 993 So.2d 952, 956 (Fla.2008);
 
 see also Walls v. State,
 
 977 So.2d 802, 803 (Fla. 4th DCA 2008).
 

 The proponent of the evidence need not call the person who actually prepared the business records in order to lay a foundation for admitting the records into evidence.
 
 Mann v. State,
 
 787 So.2d 130, 135 (Fla. 3d DCA 2001);
 
 see also Specialty Linings, Inc. v. B.F. Goodrich Co.,
 
 532 So.2d 1121, 1121 (Fla. 2d DCA 1988) (“ ‘In order to prove a fact of evidence of usual
 
 *493
 
 business practices, it must first be established that the witness is either in charge of the activity constituting the usual business practice or is well enough acquainted with the activity to give the testimony.’ ” (quoting
 
 Alexander v. Allstate Ins. Co.,
 
 388 So.2d 592, 593 (Fla. 5th DCA 1980))).
 

 In the instant case, the State’s expert was a qualified witness given his position as a store manager and training and experience in (a) phone servicing; (b) the transmission process of phone calls through Verizon’s network; (c) records maintenance; (d) data servicing; and (e) customer, billing, and technical support. Even though the expert was not individually responsible for maintaining Verizon’s records, he was trained in the procedures for maintaining business and billing records and testified that Verizon maintained its records on a regular basis, in the ordinary course of business, and as phone calls traveled throughout its network. The expert also explained the process of how phone calls connect to network towers and switching stations, which is where call records are electronically maintained at the time in which calls are made. In other words, he described the interplay of Verizon’s towers and switching stations when phone calls are made and transmitted through Verizon’s network. The expert’s knowledge of and familiarity with Verizon’s business practices met the four-part test enunciated in
 
 Yisrael. See Yisrael,
 
 993 So.2d at 956;
 
 Specialty Linings, Inc.,
 
 532 So.2d at 1121. Accordingly, the trial court did not abuse its discretion in permitting the State’s expert to testify as to how Verizon maintains and prepares its records and in admitting defendant’s wireless phone records into evidence.
 

 Next, defendant argues that the trial court abused its discretion by excluding her “reverse
 
 Williams
 
 rule”
 
 [1]
 
 evidence. Prior to trial, defendant filed a notice of intent to rely on evidence of similar crimes, arguing that (a) Earl Burgess previously murdered a person named Charles Mixon in 1993 with a firearm and (b) Burgess pled guilty to manslaughter for this crime. Defendant noted that the victim in this case and in Burgess’ case (a) were both black males, (b) were both shot and left in a prone position on the ground face down, (c) were both left beside a bed, (d) were both shot in the upper portion of their bodies with a small caliber projectile, (e) were both killed with a single shot, and (f) were both involved with drugs. The trial court sustained the State’s objection to the admission of this evidence.
 

 Relevancy is the test for admissibility of reverse
 
 Williams
 
 rule evidence:
 

 In
 
 State v. Savino,
 
 567 So.2d 892 (Fla.1990), the Supreme Court of Florida stressed the importance of relevancy and further stated: “When the purported relevancy of past crimes is to identify the perpetrator of the crime being tried, we have required a close similarity of facts, a unique or ‘fingerprint’ type of information, for the evidence to be relevant .... If a defendant’s purpose is to shift suspicion from himself to another person, evidence of past criminal conduct of that other person should be of such nature that it would be admissible if that person were on trial for the present offense.”
 

 Traina v. State,
 
 657 So.2d 1227, 1228-29 (Fla. 4th DCA 1995) (quoting
 
 Savino,
 
 567 So.2d at 894 (citations omitted)); see
 
 also
 
 
 *494
 

 Simpson,
 
 3 So.3d at 1145 n. 6 (stating the reverse
 
 Williams
 
 rule test as presented in
 
 Traína
 
 and Savino).
 

 In the instant ease, although Norris was found face down on a floor next to a bed, like the victim in Burgess’ case, the gunshot wound in Burgess’ case was in the victim’s shoulder. Moreover, in this case, arson was used to cover-up Norris’ cause of death. The similar fact evidence here was overly general and did not meet the “close similarity of facts, a unique or'‘fingerprint’ type of information” test for relevancy as described in
 
 Traina
 
 and
 
 Savino. See Peek v. State,
 
 488 So.2d 52, 55 (Fla.1986) (noting, in a traditional
 
 Williams
 
 rule case, that “ ‘[a] mere general similarity will not render the similar facts legally relevant to show identity[ ]’ ” and that “‘[tjhere must be identifiable points of similarity which pervade the compared factual situations.’ ” (quoting
 
 Drake v. State,
 
 400 So.2d 1217, 1219 (Fla.1981)));
 
 see also Vaughn v. State,
 
 604 So.2d 1272, 1273 (Fla. 4th DCA 1992) (“The similar aspects or
 
 modus operandi
 
 of the incidents must be sufficiently distinctive, unique, unusual, or of such special character as to reasonably point to the defendant as the perpetrator of both offenses.”). Simply put, the dissimilarities of these cases are greater than their similarities.
 

 Accordingly, we hold that the trial court did not abuse its discretion by not permitting defendant to introduce similar fact evidence of Earl Burgess’ 1993 crime.
 
 See Traina,
 
 657 So.2d at 1229;
 
 Olsen v. State,
 
 751 So.2d 108, 111-12 (Fla. 2d DCA 2000);
 
 Kimbrough v. State,
 
 700 So.2d 634, 637 (Fla.1997);
 
 Rivera v. State,
 
 561 So.2d 536, 540 (Fla.1990) (holding that the trial court did not abuse its discretion in excluding reverse
 
 Williams
 
 rule evidence because the only alleged similarities were that both victims “were riding bicycles when they were abducted; they were both asphyxiated; their bodies were found in the same general area; and pantyhose was discovered in the vicinity of their bodies.”).
 

 Affirmed.
 

 FARMER and LEVINE, JJ., concur.
 

 [1]
 

 .
 
 Williams v. State,
 
 110 So.2d 654, 658-63 (Fla.1959);
 
 see also
 
 § 90.404(2), Fla. Stat. (2008);
 
 Simpson v. State,
 
 3 So.3d 1135, 1145 n. 6 (Fla.2009) (" 'Reverse
 
 Williams
 
 rule’ evidence is evidence of a crime committed by another person that a defendant offers to show his or her innocence of the instant crime.”).