SAWAYA, J.
The dangerous instrumentality doctrine provides that an automobile owner may be held vicariously liable for damages caused by a negligent driver who operates the vehicle with the owner’s consent. The question presented is whether application of the doctrine necessarily makes the driver an agent of the owner for purposes of determining whether the provisions of a release, which releases and discharges the owner and his “agents,” apply to relieve the negligent driver of liability.
This case involves a tragic automobile accident that took the lives of the driver of the vehicle, Lickson Gabriel, and his passenger, Luis Valentin. The accident allegedly occurred when, in the early morning hours, Lickson failed to stop at a red light and collided with a semi-trailer. A wrongful death action was filed by Wanda Roman, individually and as the personal representative of the estate of her deceased son, Luis. The action was filed against Sean Bogle, as Personal Representative of the estate of Lickson, and the owner of the vehicle, Lesore Gabriel, who is Lickson’s father. The latter was included as a defendant pursuant to the dangerous instrumentality doctrine. For reasons not dis *1013 closed in the record, Roman executed a release that lies at the center of the current dispute between the parties. That release provides in pertinent part:
In consideration of an immediate cash payment[ ] of TEN THOUSAND DOLLARS AND NO/OO ($10,000.00) to THE ESTATE OF LUIS VALENTIN, receipt whereof is hereby acknowledged by the Releasor, her heirs, personal representatives and assigns, Releasor hereby releases and discharges Releasees, its parents, employees and subsidiaries including, but not limited to, LESORE GABRIEL AND FIRST ACCEPTANCE INSURANCE COMPANY, INC. including their officers, agents, employees, successors and assigns, from any and all claims, demands, damages, costs, expenses, and causes of action, whether direct or derivative, whether based on tort, contract or any other theory of legal recovery, for damages of every type and nature, including but not limited to compensatory damages and punitive damages, for injuries already sustained or that may hereafter be sustained in connection with the December 10, 2008[,] automobile accident which forms the basis of this claim.
The answer filed by Bogle included the affirmative defenses of release and accord and satisfaction based on the release executed by Roman. The release was attached as an exhibit. Roman did not file a reply to the affirmative defenses. Bogle filed a motion for judgment on the pleadings asserting that pursuant to the dangerous instrumentality doctrine, Lickson was the agent of Lesore by virtue of the fact that he was driving Lesore’s automobile with Lesore’s consent. The trial court agreed with that argument, granted the motion, and entered judgment in favor of Bogle based on the release.[1]
Roman appeals, contending that procedurally, the lack of a reply triggers an automatic denial of the allegations in the answer and the affirmative defenses, and that the trial court failed to apply the proper standard that governs motions for judgment on the pleadings. She also argues that Lickson was not named in the release because the release was not intended to apply to him and that he was not the agent of Lesore simply because he was driving Lesore’s vehicle when the accident occurred.
Bogle asserts that the lack of a reply essentially means that Roman did not attempt to avoid the affirmative defenses based on the release and therefore did not deny those defenses. Bogle argues, as he did to the trial court, that this document released Lesore Gabriel, his insurance carrier, and “their ... agents_” That argument is premised on the assertion that Lickson was the agent of Lesore under the dangerous instrumentality doctrine because he drove Lesore’s automobile at the time of the accident with Lesore’s consent.
We will briefly address first the procedural arguments made by the parties. A motion for judgment on the pleadings is a procedural device that allows trial courts to render a judgment as a matter of law prior to trial based solely on the pleadings. Thompson v. Napotnik, 923 So.2d 537, 539 (Fla. 5th DCA 2006). When a defendant files the motion, “all well pleaded allegations in the complaint must be accepted as true and all allegations in the answer which are automatically denied *1014 must be accepted as false, the crucial question being whether a cause of action would be established by proving the plaintiffs allegations.” Faircloth v. Garam, 525 So.2d 474, 475 (Fla. 5th DCA 1988); see also Martinez v. Fla. Power & Light Co., 863 So.2d 1204, 1205 (Fla.2003); Williams v. Howard, 329 So.2d 277, 280 (Fla.1976); Plumbing Serv. Co. v. Progressive Plumbing, Inc., 952 So.2d 1211, 1212 (Fla. 5th DCA 2007). Matters outside the pleadings may not be considered when deciding the motion. Faircloth. When a defendant files affirmative defenses and the plaintiff does not reply, the affirmative defenses are deemed denied and therefore false. Brewster v. Castano, 937 So.2d 1268, 1269 (Fla. 2d DCA 2006) (“When there has been no reply to an affirmative defense, it is deemed to be denied and therefore false.”); Ferris v. Ferris, 660 So.2d 418, 418 (Fla. 4th DCA 1995); Jaramillo v. Dubow, 588 So.2d 677, 677-78 (Fla. 3d DCA 1991); Hertz Commercial Leasing Corp. v. Seebeck, 399 So.2d 1110, 1111 (Fla. 5th DCA 1981); Fla. R. Civ. P. 1.110(e) (“Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.”).
We agree with Roman that a reply to the affirmative defenses was not necessary in order to deny them. Moreover, it appears from the record and the order under review that the trial court did not apply the proper standard in deciding the motion. But even if it had, we believe that the trial court erroneously applied the dangerous instrumentality doctrine to interpret the release to mean that Lickson was his father’s agent and therefore Lickson and his estate are released from liability for his negligent operation of his father’s automobile.
The dangerous instrumentality doctrine is a judicially created doctrine, emanating from the common law of England[2] that made its way into the jurisprudence of this state when the Florida Supreme Court adopted it in Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). The doctrine provides that:
[0]ne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.
Id. at 638 (on petition for rehearing). The doctrine is premised on “the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation.” Kraemer v. Gen. Motors Acceptance Corp., 572 So.2d 1363, 1365 (Fla.1990). Its purpose is to require financial responsibility for the carnage on the road caused by negligent drivers of automobiles entrusted to them by the owner. See id.
There are decisions, some of rather ancient vintage, that seem to designate the origins of the doctrine as flowing from common law principles governing respon-deat superior based on agency relationships. See, e.g., Orefice v. Albert, 237 So.2d 142, 144 (Fla.1970); Weber v. Porco, 100 So.2d 146, 149 (Fla.1958); May v. Palm Beach Chem. Co., 77 So.2d 468, 472 (Fla.1955) (“A study of the origin and application of the doctrine of vicarious liability on the part of an automobile owner shows clearly that whatever may be the limitations of its scope of application, liabil *1015 ity is bottomed squarely upon the doctrine of respondeat superior arising from a principal and agent relationship implied in law.”); see also Lynch v. Walker, 159 Fla. 188, 81 So.2d 268, 271 (1947), overruled on other grounds, Meister v. Fisher, 462 So.2d 1071 (Fla.1984). On the other hand, there are decisions that recognize the origins of the doctrine as emanating from common law principles of master and servant. Susco Car Rental Sys. of Fla. v. Leonard, 112 So.2d 832, 886 (Fla.1959); Anderson; Saullo v. Douglas, 957 So.2d 80, 86 (Fla. 5th DCA 2007); Burch v. Sun State Ford, Inc., 864 So.2d 466, 470 (Fla. 5th DCA 2004). Moreover, in Saullo, this court specifically stated that the doctrine is not based on respondeat superior and agency principles. Saullo, 957 So.2d at 86.
Despite the conflicting statements in the case law, as the doctrine has evolved and expanded over the many years since its adoption, the significance of its origins and the common law principles upon which they are based has steadily diminished in importance when determining the scope and reach of the doctrine. The courts began to increasingly recognize the purpose of the doctrine as a more significant factor. If it were otherwise, the courts would have had a very difficult time expanding the doctrine to lessors and bailors. In Lynch, for example, the court expanded the reach of the doctrine when it held that a bailor for hire may be vicariously liable for the negligent operation of the vehicle by the bailee. 31 So.2d at 271-72. The court noted that “ ‘[b]ailment’, ‘agency’ and ‘masters and servants’ are distinct concepts and involve different relationships,” and that confusion existed in attempting to define the distinctions for purposes of applying the dangerous instrumentality doe-trine, especially “as to the basis of liability of a bailor-owner of an automobile for torts committed by his bailee.” Id. at 271. The court attached little significance to the distinctions because it determined that the doctrine is based on “a common and basic factor to wit: When an owner authorizes and permits his automobile to be used by another he is liable in damages for injuries to third persons caused by the negligent operation so authorized by the owner.” Id.
The court in Susco attempted to eliminate the confusion altogether by explaining:
Some of the apparent inconsistencies in the cases result from efforts to reason within the confines of inapplicable principles, such as those of respondent superior. Confusion can be reduced by recognition that liability under this doctrine is imposed independent of other theories of vicarious responsibility in tort law.
112 So.2d at 836.[3] Susco was followed by Meister, wherein the court explained the doctrine as follows:
This form of vicarious liability is not based on respondent superior or an agency conception, but on the practical fact that the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent.
462 So.2d at 1072 (quoting Jordan v. Kelson, 299 So.2d 109, 111 (Fla. 4th DCA 1974)) (emphasis omitted). The court in Rippy again reiterated that “[t]he doctrine is based on ‘the practical fact that the owner of an instrumentality which [has] the capability of causing death or destruc *1016 tion should in justice answer for misuse of this instrument by anyone operating it with his knowledge and consent.’ ” 80 So.3d at 307 (quoting Meister).
This court in Saullo followed Meister and held that “[t]he doctrine is not based on respondeat superior or agency, but on ‘the practical fact that the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent.’ ” 957 So.2d at 86 (quoting Meister) (emphasis omitted); see also Burch, 864 So.2d at 470 (“Although originally only applicable in the master-servant context, the doctrine was later extended to bailments, including lessor-lessee relationships.”).[4]
Whatever utility may have derived from the perceived need to establish the parentage of the doctrine’s origins, we do not believe such endeavors are necessary to resolve the issue in this case. As the courts have repeatedly stated, the doctrine is based on the declared principle that an owner of a vehicle may be vicariously liable for the negligence of a driver who operates the vehicle with the owner’s knowledge and consent. Application of this principle does not make the driver an agent any more than it does an employee, bailee, or lessee. While the doctrine may apply to instances where an agency relationship exists between the owner and driver, that relationship is not necessary in order to make the doctrine applicable and it cannot be determined as a matter of law that such an agency relationship existed in the instant case.
“The essential elements necessary to establish an actual agency relationship are (1) acknowledgment by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) control by the principal over the agent’s actions.” Amstar Ins. Co. v. Cadet, 862 So.2d 736, 741 (Fla. 5th DCA 2003) (citing Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla.2003) and Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990)). Here, there is no evidence in this record that any agency relationship existed between the driver and the owner and even if there were, it would have been impermissible to consider matters beyond the confínes of the pleadings. Faircloth. Whether an agency relationship exists is generally a question for the jury to resolve and the party alleging the relationship has the burden of proving its existence. Font v. Stanley Steemer Int'l, Inc., 849 So.2d 1214, 1216 (Fla. 5th DCA 2003).
If Bogle seeks to establish that Lickson was the agent of his father, Bogle will have the burden of proving the agency relationship. Reliance on the dangerous instrumentality doctrine to do so was error. We *1017 reverse the judgment under review and remand this case for further proceedings.
REVERSED and REMANDED.
TORPY and JACOBUS, JJ, concur.

. The order granting the motion specifically provides that "[bjased upon the foregoing analysis, it is ORDERED AND ADJUDGED that Defendant, Sean Bogle, as Personal Representative of the Estate of Lickson Gabriel's Motion for Judgment on the Pleadings is hereby GRANTED. This Court hereby enters Final Judgment in favor of the Defendant and Orders that the Plaintiff shall take nothing by this action and go hence without day.”

. "The dangerous instrumentality doctrine is an old and well-settled rule that can be traced back to English common law.” Rippy v. Shepard, 80 So.3d 305, 306 (Fla.2012).

. As the court noted in Salsbury v. Kapka, 41 So.3d 1103 (Fla. 4th DCA 2010), “[t]he Legislature is ... free to alter the dangerous instrumentality doctrine as it deems appropriate.” Id. at 1105 n. 1. However, in order to resolve the issue before us, it is not necessary to discuss those enactments where the Legislature has done so.

. Appellee’s reliance on Ford v. Coleman, 462 So.2d 834 (Fla. 5th DCA 1984), is misplaced. In Ford, this court was confronted with a situation where a vehicle owned by a corporation was driven by an individual who claimed to be an agent of the corporation. The driver caused an accident and the injured passenger gave a release to the corporation releasing "its agents, servants, successors, heirs, executors and administrators.” Id. at 835. When the injured passenger subsequently sued the driver, the driver pled the release as an affirmative defense, claiming that he was an agent under the release. The case proceeded to trial and the jury resolved the disputed issues of fact relating to the release and, as it appears from the opinion, the trial court thereafter found as a matter of law that the driver was an agent of the corporation covered under the release. Moreover, as we have explained, more recent decisions from the Florida Supreme Court and this court clearly hold that application of the doctrine is not based on an agency relationship and therefore does not mean as a matter of law that the driver is the agent of the owner.