DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WATERFALL VICTORIA GRANTOR TRUST II, SERIES G,**
Appellant,

v.

**SARAH MCDONALD,**
Appellee.

No. 4D19-3536

[August 25, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barry Stone, Senior Judge; L.T. Case No. CACE11-0022643.

Eddy Leal of Eddy Leal, P.A., Miami, for appellant.

Nicole R. Moskowitz of Neustein Law Group, P.A., Aventura, for appellee.

FORST, J.

Following a non-jury trial, Appellant Waterfall Victoria Grantor Trust II, Series G, successor owner of the mortgage and promissory note at issue, appeals the portion of the trial court's entry of final judgment of foreclosure against appellee Sarah McDonald that awarded Appellant $314,000 as unpaid principal on an underlying loan. Specifically, Appellant argues that the trial court erred in entering a reduced final judgment of foreclosure that reflected only one of two loan disbursements on which McDonald defaulted, because the trial court concluded Appellant had waived its argument as to the second disbursement by failing to plead a reply to McDonald's affirmative defenses.

While we agree that Appellant was required to file a reply to avoid McDonald's affirmative defenses, we hold that Appellant's failure to do so did not defeat its waiver argument because the issue was tried by consent. We also agree with Appellant's argument that the introduction of a letter from the loan servicer was improper under the business record hearsay exception because the witness could not lay the predicate foundation.

Thus, based on these errors, we hold that the trial court erred in entering a reduced final judgment of foreclosure.

## Background

In 2006, Sarah and Rick McDonald signed a home equity line of credit agreement ("line of credit") with Countrywide Home Loans (the original lender), secured by a second mortgage on their home. The line of credit provided a credit limit of $1,000,000 and obligated the McDonalds to repay whatever they borrowed, up to that amount. When the McDonalds subsequently defaulted on their repayment obligations, a foreclosure complaint was filed against the McDonalds, alleging that they had made two draws on the line of credit. Specifically, the complaint alleged that, upon origination of the loan, the McDonalds made an initial draw of $314,000 and, five months later, made an additional draw of $690,000.

In response, Sarah McDonald filed an answer and affirmative defenses. Rick McDonald never responded and was ultimately judicially defaulted (he is not a party to the instant appeal). Sarah McDonald's answer did not dispute either the original loan disbursement of $314,000 or the second disbursement of $690,000. Nor did she dispute that in the loan agreement both McDonalds "agree[d] that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement[.]"

However, Sarah McDonald asserted that the second disbursement of $690,000 was made solely at her husband's request without her consent or knowledge and after "the account had been closed[.]" She further alleged that the lender knew or should have known that the account was closed, and yet had allowed her husband to withdraw money from the account without her consent. Sarah McDonald thus denied owing the principal sum of $998,777.04, drawing the additional $690,000, and retaining the benefit of the draws. Appellant did not plead a reply to Sarah McDonald's affirmative defenses, and the case proceeded to a non-jury trial.

In support of her affirmative defense that at the time of the $690,000 draw, Rick McDonald had already requested that Appellant freeze the line of credit account and that the account had, in fact, been frozen at this time, Sarah McDonald called her husband's former attorney as a witness. Through the former attorney's testimony, the court admitted three documents into evidence under the business record hearsay exception: (1) an email from the former attorney to a Countrywide Home Loans representative asking to cancel the subject loan, dated July 18, 2006; (2)

a letter from the former attorney to the same Countrywide representative, dated July 18, 2006, again asking to cancel the loan and stating that "Mr. McDonald does not authorize any further transactions on this loan or line of credit"; and (3) an alleged letter from Countrywide confirming receipt of the email, and stating that, per Rick McDonald's request, the account had been frozen.

Regarding the third document—the letter from Countrywide—the former attorney testified: the letter sought to be placed into evidence was an accurate copy of the letter which she maintained in her records; it was made at or near the time indicated; it was made by a person with knowledge; and it was her common business practice as an attorney to maintain such records. However, when questioned by Appellant's counsel, the former attorney testified: she did not and had never worked for Countrywide; she was not present when the letter was created; she did not know if the purported author had actually drafted the letter; she did not know why the two pages of the letter introduced at trial were written in different font sizes and contained different margins; she did not know how Countrywide had photocopied the letter; and she did not know if either of the phone numbers on the letter matched up with those of Countrywide. Over Appellant's objection that the letter was not properly authenticated, the trial court admitted the letter into evidence.

At the conclusion of trial, Appellant argued that Sarah McDonald had waived her affirmative defenses related to the purportedly improper $690,000 draw because of the "Billing Rights Statement" attached to the original note. That statement provided that, in the event of a billing statement error or dispute concerning the amount borrowed, the McDonalds would have to provide a protest letter within sixty days. If such a letter was not timely sent to Appellant, the McDonalds could not dispute the amount. Appellant also introduced evidence that the McDonalds had received billing statements noting the $690,000 disbursement, and Sarah McDonald testified that she received a copy of the $690,000 check drawn on the line of credit account made payable to her husband Rick McDonald. Appellant argued that, because Sarah McDonald had not complied with the Billing Rights Statement's protest requirements and had made payments with respect to the second disbursement, she had waived her ability to contest the disbursement.

In turn, Sarah McDonald argued that Appellant could not contend she had waived her affirmative defenses by failing to comply with the terms of the Billing Rights Statement because Appellant had failed to plead a reply in avoidance of her affirmative defense relating to the improper draw after the account was allegedly frozen. In short, Sarah McDonald maintained

3

that Appellant's waiver argument was waived by failure to plead a reply on the avoidance.

The trial court agreed that Appellant's failure to properly avoid Sarah McDonald's affirmative defenses precluded the court from considering the issue. Thus, while the court ultimately entered final judgment in Appellant's favor, the court awarded damages reflecting only the amount of the initial $314,000 draw, plus interest, and did not award damages for the $690,000 draw. Appellant timely appealed.

**Analysis**

1. *Waiver of Appellant's Argument Against Sarah McDonald's Affirmative Defenses*

"[W]here a trial court's conclusions following a non-jury trial are based upon legal error, the standard of review is *de novo*." *Acoustic Innovations v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008). Further, "the standard of review of a trial court's interpretation of the rules of civil procedure is de novo." *Donado v. PennyMac Corp.*, 174 So. 3d 1041, 1042 (Fla. 4th DCA 2015) (quoting *R.T.G. Furniture Corp. v. Coates*, 93 So. 3d 1151, 1153 (Fla. 4th DCA 2012)).

When a plaintiff seeks to deny an affirmative defense, a "denial is neither required nor permitted by the rules" of civil procedure. *U.S. Bank Nat'l Assoc. for Registered Holders of Citigroup Mortg. Loan Tr. v. Wilson*, 252 So. 3d 306, 308 (Fla. 5th DCA 2018). Rather, Florida Rule Civil Procedure 1.110(e) provides an automatic denial of every allegation of an affirmative defense so that "[w]hen a defendant files affirmative defenses and the plaintiff does not reply, the affirmative defenses are deemed denied and therefore false." *Roman v. Bogle*, 113 So. 3d 1011, 1014 (Fla. 5th DCA 2013); Fla. R. Civ. P. 1.110(e) (an averment in a pleading "to which no responsive pleading is required or permitted shall be taken as denied or avoided"); *see also Moore Meats, Inc. v. Strawn*, 313 So. 2d 660, 662 (Fla. 1975). Conversely, where an answer contains an affirmative defense and the plaintiff seeks *to avoid it,* Rule 1.100(a) provides that the plaintiff *must* file a reply on the avoidance. Fla. R. Civ. P. 1.110(a).

Thus, two classes of defensive pleas exist:

> The first is a plea by way of traverse. This means a denial of an ultimate fact pleaded in the preceding pleading. The second class of defensive plea is one by way of confession and avoidance. All affirmative defenses are pleas by way of

4

confession and avoidance. They admit the allegations of the plea to which they are directed and allege additional facts that avoid the legal effect of the confession.

*Moore Meats, Inc.*, 313 So. 2d at 661–62 (citation omitted). While a denial rejects the facts alleged in the affirmative defense, an avoidance alleges a new matter in opposition to a pleading that admits the facts alleged in the pleading but shows cause as to why those facts should not have their ordinary legal effect. A reply essentially pleads an affirmative defense to an affirmative defense, so the requirement of filing a reply to assert an avoidance lays a predicate so that the parties may prepare accordingly. *Hertz Commercial Leasing Corp. v. Seebeck*, 399 So. 2d 1110, 1111 (Fla. 5th DCA 1981); *Moore Meats, Inc.*, 313 So. 2d at 661.

Here, Sarah McDonald sufficiently alleged her affirmative defense that the $690,000 loan disbursement was improper because the account had been frozen. In response, Appellant did not attempt to deny the underlying facts to argue that the account had not been frozen or that the funds had been properly disbursed; rather, it argued that even if the second loan disbursement was improper, Sarah McDonald had waived her right to contest it because she had not complied with the terms of the Billing Rights Statement. Because this essentially amounted to an affirmative defense to McDonald's affirmative defense, Appellant was required to file a reply to assert the avoidance. *See* Fla. R. Civ. P. 1.100(a); *Frisbie v. Carolina Cas. Ins. Co.*, 162 So. 3d 1079, 1081 (Fla. 5th DCA 2015) ("Here, because Appellee raised the issue of unclean hands as an avoidance of Appellants' two affirmative defenses, Appellee should have pleaded the issue in a reply . . . .").

However, "[a]n exception to the rule requiring relief to be pled is if the issue is tried by consent of the parties." *Fed. Home Loan Mortg. Corp. v. Beekman*, 174 So. 3d 472, 475 (Fla. 4th DCA 2015). "An issue is tried by consent 'when there is no objection to the introduction of evidence on that issue.'" *Id.* (quoting *Scariti v. Sabillon*, 16 So. 3d 144, 145-46 (Fla. 4th DCA 2009)). "When issues not raised by the pleadings are tried by express or implied consent, they shall be treated in all respects as if they had been raised in the pleadings." *Id.* (quoting Fla. R. Civ. P. 1.190(b)).

In *Citigroup Mortgage Loan Trust, Inc. v. Scialabba*, 238 So. 3d 317 (Fla. 4th DCA 2018), we explained the reasoning behind the general requirement that a plaintiff plead an avoidance is that introducing evidence that shifts the trial's focus to the defendant's conduct is a "blind issue [that] veer[s] into the midst of the trial without warning and without [allowing the defendant] an opportunity to negate" the allegations. *Id.* at

324 (quoting *N. Am. Philips Corp. v. Boles*, 405 So. 2d 202, 203 (Fla. 4th DCA 1981)). However, "because [the defendants in that case] never objected to the evidence or argument . . . on grounds that the issue was not framed in the pleadings," we held that there was no such due process problem and "the issue was tried by consent." *Id.*

Likewise, Sarah McDonald did not object to the introduction of waiver evidence on the basis that waiver was not raised in a reply and was thus outside the scope of the pleadings. Although Appellant was required to plead a reply to assert its waiver argument, its failure to do so did not defeat its waiver argument because, at trial, Sarah McDonald did not object to the evidence or argument on grounds that the issue was not framed in the pleadings. Thus, per *Scialabba*, the waiver issue was tried by consent.

*2. Introduction of the Countrywide Letter Through the Former Attorney*

Appellant further argues that the trial court erred in allowing McDonald to introduce into evidence the purported letter from Countrywide Home Loans through the former attorney.

"This [c]ourt reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion." *Cayea v. CitiMortgage, Inc.*, 138 So. 3d 1214, 1216 (Fla. 4th DCA 2014) (citing *Hayes v. Wal-Mart Stores, Inc.*, 933 So. 2d 124, 126 (Fla. 4th DCA 2006)). "However, a trial court's discretion is limited by the rules of evidence." *Id.*

No dispute exists that the Countrywide letter is an out-of-court statement used to prove the truth of the matter asserted and, thus, is hearsay as defined by section 90.801(1)(c), Florida Statutes (2018). Hearsay is not admissible unless a statutory exception applies. § 90.802, Fla. Stat. (2018)  In this case, McDonald relies on the business record hearsay exception as codified in section 90.803, Florida Statutes (2018), which defines a business record as:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all *as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and*

6

*s. 90.902(11),* unless the sources of information or other circumstances show lack of trustworthiness.

§ 90.803(6)(a), Fla. Stat. (2018) (emphasis added).

Thus, to secure admissibility of a business record, "the proponent must show: (1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) . . . was a regular practice of that business to make such a record." *Yisrael v. State*, 993 So. 2d 952, 956 (Fla. 2008). A party seeking to admit evidence under this exception may establish the requisite foundation in one of three ways:

> "First, the proponent may take the traditional route, which requires that a records custodian take the stand and testify under oath to the predicate requirements." [*Yisrael*, 993 So. 2d at 956] (citing § 90.803(6)(a), Fla. Stat. (2004)). "Second, the parties may stipulate to the admissibility of a document as a business record." *Id.* "Third and finally, since July 1, 2003, the proponent has been able to establish the business-records predicate through a certification or declaration that complies with sections 90.803(6)(c) and 90.902(11), Florida Statutes (2004)." *Id.* at 957. *It is important to note that the authenticating witness need not be "the person who actually prepared the business records." Cooper v. State*, 45 So. 3d 490, 492 (Fla. 4th DCA 2010). *Rather, the witness just need be well enough acquainted with the activity to provide testimony. Id.* at 493 (quoting *Alexander v. Allstate Ins. Co.*, 388 So. 2d 592, 593 (Fla. 5th DCA 1980)).

*Cayea,* 138 So. 3d at 1217 (emphasis added). "If evidence is to be admitted under one of the exceptions to the hearsay rule, it must be offered in strict compliance with the requirements of the particular exception." *Yisrael*, 993 So. 2d at 957.

Here, a records custodian did not appear as a witness, the parties did not stipulate to the letter's admissibility, and a certification or declaration complying with sections 90.803(6)(c) and 90.902(11), Florida Statutes, was not provided. McDonald attempted to lay the predicate foundation through the former attorney, who testified that she did not and had never worked for Countrywide. To lay the foundation for the letter under the business record exception, the former attorney did not need to be the person who actually prepared the letter, but she needed to be sufficiently

acquainted with Countrywide's record-keeping procedures and activities so that she could attest that the letter was: made at or near the purported time; made by or from information transmitted by a person with knowledge; and kept in the ordinary course of business. *Yisrael*, 993 So. 2d at 956. However, the former attorney could not do so.

Instead, the former attorney's testimony amounted to admissions that she did not work for and was not associated with Countrywide, which had (allegedly) sent her this letter in response to an earlier email and phone conversation, and that she was unfamiliar with how the letter had been created. Moreover, the former attorney was unaware as to why the two pages of the letter introduced into evidence at trial contained different font sizes and margins. She further admitted that she was unfamiliar with Countrywide's record-keeping system and did not know how or when the data was uploaded into the system or how and by whom the letter was prepared. Thus, it is apparent the former attorney was not qualified to lay a proper predicate for the letter.

As the former attorney did not have personal knowledge of the elements necessary to establish a business record hearsay exception, she could not lay the predicate foundation and, therefore, the letter's admission into evidence was error. *See Lassonde v. State*, 112 So. 3d 660, 663 (Fla. 4th DCA 2013) (error to admit store receipt generated at the time goods were stolen when there was no foundation from a witness who knew and understood the business records sought to be introduced); *Rodgers v. State*, 113 So. 3d 761, 765 (Fla. 2013) (if a party does not lay the necessary foundation, the document is not admissible under section 90.803(6)); *Brown v. State*, 389 So. 2d 269, 270 (Fla. 1st DCA 1980) (doctor who was unfamiliar with record-keeping could not lay foundation). We thus agree with Appellant that, under the business records exception, the former attorney was not a qualified witness to lay the requisite foundation for the letter, and it should not have been admitted into evidence.

## Conclusion

In entering its final judgment for Sarah McDonald, the trial court stated that:

> I'll have to say, in all honesty . . . if I didn't feel constrained by the requirement for a reply and a reply in avoidance. And if I didn't . . . recognize that they stated in the letter that it was frozen, I would have found, as argued by the Plaintiff. Both, in terms of a waiver by making the payments for five years and by the 60-day provision.

As noted above, Sarah McDonald waived her procedural argument regarding the $690,000 disbursement because the parties tried this issue by consent. Thus, the trial court erred in denying Appellant's waiver argument. The admissible evidence adduced at trial demonstrated that the Sarah McDonald and her husband jointly took out a loan, secured by a mortgage against their home; the amounts disbursed on the loan were $314,000 *and $690,000*; after disbursement of the $690,000; the McDonalds (individually or collectively) did not comply with the Billing Rights Statement and did not attempt to dispute the loan amount; instead, Sarah McDonald continued to pay on the loan amount for five additional years; and, the McDonalds eventually defaulted on the loan.

Sarah McDonald does not dispute these facts. Rather, she argued the $690,000 disbursement was improper because the account was frozen at the time. However, the only evidence supporting this contention was the Countrywide letter sent to the former attorney. As that letter was improperly admitted as hearsay because the former attorney failed to lay the proper foundation to allow its admission, the trial court should not have considered it in awarding the judgment, and the record thus lacked evidence that the account was frozen. Moreover, as noted above, the $690,000 was received, no attempt was made by either McDonald to cancel the disbursement and, to the contrary, Sarah McDonald made monthly loan repayments for five years.

The McDonalds were jointly and severally liable on the loan; thus, the trial court erred in not entering a foreclosure judgment for the full amount of the two disbursements made and secured under the line of credit. We therefore reverse the trial court's final judgment and remand for entry of a final judgment reflecting the full amount due under the line of credit, plus interest.

*Reversed and remanded for further proceedings.*

MAY and LEVINE, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

9